B25A (Official form 25A)(12/11)

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF CONNECTICUT

In Re:                                                          **Chapter 11**

    **Richard and Stephanie Lucarelli,**              **Case No.  13-30350 JAM**
        **Debtors**

    **Lucarelli's Executive Answering Service, LLC,**    **Case No.  13-30443 JAM**
        **Debtor**

---

## SECOND AMENDED
## JOINT PLAN OF REORGANIZATION OF RICHARD AND STEPHANIE LUCARELLI
## AND LUCARELLI'S EXECUTIVE ANSWERING SERVICE, LLC
## DATED MARCH 5, 2014

## ARTICLE I
## SUMMARY

This Second Amended Joint Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes as set forth herein to resolve claims of creditors of the personal bankruptcy estate of Richard and Stephanie Lucarelli ("Lucarellis" and the "Lucarelli Case") and claims of creditors of the bankruptcy estate of Lucarelli's Executive Answering Service, LLC ("LEAS"). Sources of funding of distribution to creditors include a voluntary withdrawal of funds in an amount not less than $128,000 from exempt retirement accounts and cash flow from operations of LEAS.

This plan provides for six classes of secured claims; two classes of unsecured claims; and the class of equity security holders. Unsecured creditors holding Allowed claims against the Lucarellis will receive a distribution on the Effective Date which the proponents of this Plan value at approximately three cents on the dollar. Unsecured creditors holding Allowed claims against LEAS will receive distributions over five years, with no interest, which the proponents of this plan estimate will total twenty cents on the dollar.

This Plan also provides for the payment of Administrative Expenses and Priority Claims. Priority Claims include an IRS and DRS liability totaling about $64,000 in the Lucarelli Case and each will be paid in full on the Effective Date. In the LEAS case there is one such claim owed to the New York State Department of Taxation in the sum of about $33,000. It will be paid with statutory interest over approximately 48 months.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and**

**discuss them with your attorney, if you have one.   If you do not have an attorney, you may wish to consult one.**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.    Secured Claim of Capital One

The Allowed claim of Capital One that is secured by all assets of LEAS.

2.02    Class 2.    Secured Claim of Ciani Communications

The claim of Ciani Communications to the extent Allowed as secured by all assets of LEAS.

2.03    Class 3.    Secured Claim of the City of Derby

The Allowed claim of the City of Derby that is secured by all assets of LEAS.

2.04    Class 4.    First Mortgage secured claim of Bank of America

The Allowed claim of Bank of America (serviced by JPMorgan Chase Bank) that is secured by a first mortgage on the Lucarelli's home at 1890 Litchfield Turnpike, Woodbridge, Connecticut.

2.05    Class 5.    Second Mortgage secured claim of JPMorgan Chase Bank

The Allowed claim of JPMorgan Chase Bank that is secured by a second mortgage on the Lucarelli's home at 1890 Litchfield Turnpike, Woodbridge, Connecticut.

2.06    Class 6.    Third Mortgage secured claim of Bank of America

The Allowed claim of Bank of America that is secured by a third mortgage on the Lucarelli's home at 1890 Litchfield Turnpike, Woodbridge, Connecticut.

2.07    Class 7.    Unsecured LEAS Claims

All Allowed unsecured claims against LEAS comprising eleven (11) claims totaling approximately $257,319, subject to any objections to claims.

2.08    Class 8.    Unsecured Lucarelli Claims

2

All Allowed unsecured claims against Richard and/or Stephanie Lucarelli. Presently 38 claims are asserted totaling $1,096,795, subject to any objections to claims.

2.09   Class 9.          Equity Interests

Equity Interests of Richard and Stephanie Lucarelli in Debtor LEAS and the interest of the individual Debtors in their personal bankruptcy estate.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSES,**
**CHAPTER 11 QUARTERLY FEES, AND PRIORITY TAX CLAIMS**

3.01. Unclassified Claims.     Under §1123(a)(2), Administrative Expenses, chapter 11 quarterly fees, and Priority Tax Claims are not in classes.

3.02.   Administrative Expenses.  Each holder of an Administrative Expense Allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03.   Priority Tax Claims.   Each holder of an Allowed Priority Tax Claim against the Lucarellis will be paid in cash on the Effective Date. The holder of the Priority Tax Claim against LEAS will be paid in equal monthly payments commencing on the first day of the next full calendar month after the Effective Date, amortized with interest at the statutory rate applicable on the Confirmation Date over the period of approximately forty-eight (48) months with a final payment no more than about five years after the Petition Date.

3.04.   Chapter 11 Quarterly Fees.  All fees  for these present proceedings required to be paid by 28 U.S.C. § 1930(a)(6) will accrue and be timely paid until the respective case is closed, dismissed, or converted to another chapter of the Code or provisionally closed after the Effective Date and commencement of payments, if Allowed by the Court.  Any chapter 11 quarterly fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.  In LEAS the U.S. Trustee has filed an unsecured claim for $1,625 of quarterly fees left unpaid in a prior chapter 11 proceeding that was dismissed.  Said sum is included in Class 7.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01    Claims and interests shall be treated as follows under this Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of Capital One<br><br>Collateral description = All assets of LEAS<br><br>Allowed Secured Amount = $17,112 | No | Impaired | Monthly payment = about $270<br><br>Begin date = First Business Day of next calendar month after Effective Date<br><br>Payments End = Month 72 |

3

| | | | | |
|---|---|---|---|---|
| | Priority of lien = First | | | Interest Rate:  Plan Interest Rate (see VIII(t)) <br><br> Treatment of Lien = Retained until fully paid |
| 2 | Secured claim of Ciani Communications LTD <br><br> Collateral description = All assets of LEAS <br><br> Allowed Secured Amount = $50,000 <br><br> Priority of lien = Second | No | Impaired | Monthly payment = about $794 <br><br> Begin date = First Business Day of next calendar month after Effective Date <br><br> Payments End = Month 72 <br><br> Interest Rate = 4.5% <br><br> Treatment of Lien = Retained until fully paid |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 3 | Secured claim of City of Derby <br><br> Collateral description= All assets of LEAS <br><br> Allowed Secured Amount = $36,697.79 <br><br> Priority of lien = Third | No | Impaired | Monthly payment = about $562 <br><br> Begin date = First Business Day of next calendar month after Effective Date <br><br> Payments End = Month 72 <br><br> Interest Rate = 3% <br><br> Treatment of Lien =  Retained until fully paid |

*Richard and Stephanie Lucarelli Secured Claims*

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 4 | Secured claim of Bank of America (JPMorgan Chase Bank, servicer) <br><br> Collateral description =1890 Litchfield Turnpike, Woodbridge, CT <br><br> Allowed Secured Amount = $382,466.36 <br><br> Pre-petition arrearage = $11,652.54 <br><br> Priority of lien = First | No | Unimpaired | Debtor agrees that this claim is a non-modifiable claim.  Debtor will reinstate all arrearages owed at the time of confirmation over a period of 25 months without interest commencing on the 15th day of the next calendar month after the effective date and thereafter by the 1st of each month in equal monthly installments of $484.40.  The claimed arrearages owed as of the date of the Lucarelli case petition date was $11,625.54. <br><br> In addition to the arrearage payment, the Debtor will continue to make his regular post-petition monthly mortgage payments effective 3/1/13 as they become |

| | | | | |
|---|---|---|---|---|
| | | | | due pursuant to the terms of the underlying Note and Mortgage. The current post petition mortgage payment is $4,230.53, including at this time about $2,868.96 principal and interest and $1,361.57 real property tax escrow, and payments end approximately July 2032.<br><br>Debtor agrees that this amount may change in accordance with the underlying Note and Mortgage as a result of any change in escrow.  Debtor agrees that if any additional arrearages have become due at the time of confirmation that they will be paid together with the above arrearage.<br><br>Interest Rate  = 5.875%<br><br>Treatment of Lien = retained until fully paid;<br><br>Default:  Upon confirmation of the Debtor's case, the automatic stay pursuant to 11 U.S.C. §362 shall no longer be applicable so that this lender, its successors or assigns, can enforce its default rights pursuant to the underlying Note and Mortgage without further order of this court. |
| 5 | Secured claim of JPMorgan Chase Bank, N.A.<br><br>Collateral description = 1890 Litchfield Turnpike, Woodbridge, CT<br><br>Allowed Secured Amount = $98,879.83<br><br>Priority of lien = Second | No | Unimpaired-Plan leaves unaltered legal, equitable and contractual rights of claimant | For Descriptive Purposes Only, not intended to alter the rights under loan documents as effective prior to Petition Date:<br><br>At the time of the bankruptcy filing the Debtor was current with all Note obligations.  The Debtor agrees to continue to remain current on all payments pursuant to the underlying loan documents. The post-petition monthly payment as of 3/1/13 was $680.51. Debtor agrees to continue to maintain the monthly mortgage amount that becomes due, including any increase due to a variable rate adjustment.<br><br>Begin date = First Business Day of next calendar month after Effective Date<br><br>Payments End = 15 years, approximately 10/2028<br><br>Interest rate  = 3.5%, or as |

| | | | | |
|---|---|---|---|---|
| | | | | adjusted per note terms<br><br>Treatment of Lien = retained until fully paid.<br><br>Default:  :  Upon confirmation of the Debtor's case, the automatic stay pursuant to 11 U.S.C. §362 shall no longer be applicable so that this lender, its successors or assigns, can enforce its default rights pursuant to the underlying Note and Mortgage without further order of this court. |
| 6 | Secured claim of<br>Bank of America, N.A.<br><br>Collateral description = 1890 Litchfield Turnpike, Woodbridge, CT<br><br>Allowed Secured Amount = $179,310.32<br><br>Priority of lien = Third | No | Unimpaired-Plan leaves unaltered legal, equitable and contractual rights of claimant | For Descriptive Purposes Only, not intended to alter the rights under loan documents as effective prior to Petition Date:<br><br>At the time of the bankruptcy filing the Debtor was current with all Note obligations.  The Debtor agrees to continue to remain current on all payments pursuant to the underlying loan documents. The post-petition monthly payment as of 3/1/13 was about $1400.  Debtor agrees to continue to maintain the monthly mortgage amount that becomes due, including any increase if applicable due to a variable rate adjustment. Debtor will maintain real property tax and insurance payments either directly or through escrow with the senior lienholder.<br><br>Begin  date  =  continue  regular timely monthly payments<br><br>Payments End = 10/1/23<br><br>Interest rate  = 2.75%, or as adjusted per note terms<br><br>Treatment of Lien = retained until fully paid.<br><br>Default:  :  Upon confirmation of the Debtor's case, the automatic stay pursuant to 11 U.S.C. §362 shall no longer be applicable so that this lender, its successors or assigns, can enforce its default rights pursuant to the underlying Note and Mortgage without further order of this court. |

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 7 | Allowed general unsecured claims against LEAS comprising 11 claims totaling approximately $257,319 | Impaired | LEAS shall pay twenty percent (20%) to Allowed claims against LEAS in sixty (60) equal monthly payments, without interest, commencing on the 15th day of the 2nd full calendar month after Effective Date |
| 8 | Allowed general unsecured claims against Richard and/or Stephanie Lucarelli comprising 38 claims totaling approximately $1,096,795, subject to certain objections | Impaired | Pro Rata share of $34,347 on the Effective Date |
| 9 | Equity Interests of Richard and Stephanie Lucarelli as individual debtors and holders of 100% membership in LEAS | Impaired - Insiders | The Lucarellis will liquidate exempt retirement funds to pay all Effective Date Payments.  Lucarellis shall continue to own 100% of the membership interests in LEAS after Confirmation |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been Allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is Allowed by a final non-appealable order.  Pending distribution the estate shall not be obligated to escrow any funds for the asserted claims and no interest shall be paid should the claim ultimately be Allowed and distributions then paid.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtors assume the executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as provided in Article VII that are listed in Schedule A appended hereto.

(b)    Upon the Effective Date, and as of the Confirmation Date, all executory contracts and/or unexpired leases not expressly assumed under Section 6.01(a) above are conclusively rejected. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than fourteen (14) days after the Confirmation Date.

7

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

For payment in full of the two Priority Tax Claims against the Lucarelli estate, and the distribution in accordance with this plan to Class 8 in the Lucarelli proceeding, the Lucarellis shall withdraw funds not less than $128,000 from their personal retirement accounts which are fully exempt from execution by creditors under state law or federal bankruptcy law and thus not otherwise available for payment of claims except to the extent the Lucarellis voluntarily commit to such distribution upon confirmation of this Plan. The balance of said funds shall be disbursed to Administrative Expenses of both cases upon allowance, with any remaining sum owed to be paid in accordance with agreements between the holder of such Administrative Expense and the Debtors.  To the extent of payment of Administrative Expenses the LEAS estate in this manner the creditors of LEAS also are benefited by this voluntary contribution by the Lucarellis who make up the equity class of LEAS. In addition, to the extent required, in the sole discretion of the Lucarellis, for LEAS to have sufficient net income to fund the payments of LEAS to its creditors pursuant to the Plan the Lucarellis will reduce their future incomes from LEAS.   LEAS shall pay its Priority Tax Claims, the secured claims of classes 1 through 3, and the distribution to unsecured claims in Class 7 from the future proceeds of LEAS operations.  The Lucarellis shall pay their secured claims of Classes 4 through 6 from their future wages from LEAS.  All payments shall be issued by the Plan Administrators, Richard and Stephanie Lucarelli. Debtors will pay their post-confirmation legal fees and costs when billed, and may hire such other professionals as they determine are appropriate, without the necessity of further court authority.  The Plan Administrators may accelerate any payment required by this plan after the Effective Date as to any creditor without altering the obligations hereunder to any other creditors as long as such payment is not inconsistent with Section 1129(a)(9)(C) of the Code.

## ARTICLE VIII
## DEFINITIONS AND RULES OF CONSTRUCTION

8.01.   <u>Definitions and Rules of Construction</u>.  The definitions set forth in §§101, 363(a), 547(a), 1101, and 1125(a) of the Code shall apply when terms defined in the Code are used in this Plan. The Rules of Construction in §102 of the Code shall apply when construing this Plan.  The Definitions set forth in the Code are supplemented as follows:

a)  "Administrative Expense" means a right to payment Allowed under §503 of the Code, including §503(b)(9), and any reclamation claim Allowed under § 546(c).

b)  "Allowed" means, with respect to a particular claim, (a) the dollar amount of a claim that is listed in the Debtor's Schedules, as they may from time to time be amended in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), unless noted as disputed, contingent or unliquidated, if the claimant of such claim has not filed a proof of claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules, or (b) if the claimant has filed a proof  of claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c) of the Bankruptcy Rules or if a proof of claim for such claimant is deemed filed under applicable law or by reason of an order of the Bankruptcy Court within such applicable period of limitation:  (i) the dollar amount stated in such proof of claim, if no objection to such proof of claim has been interposed by a party in interest within the

8

applicable period of limitations fixed by this Plan, the Bankruptcy Code or applicable Bankruptcy Rules, or as otherwise fixed by the Bankruptcy Court, or (ii) such dollar amount as shall be fixed by an order of the Bankruptcy Court which has become a Final Order, if an objection has been interposed by a party in interest within the applicable period of limitations fixed by this Plan, the Bankruptcy Code or applicable Bankruptcy Rules, or the Bankruptcy Court or, pending the determination of such objection, the dollar amount of such claim, if any, which would be Allowed in the relevant Class if such pending objection were to be granted in full by the Bankruptcy Court, or (c) with respect to the allowance of fees and expenses pursuant to §§ 330, 331, 503(b) of the Bankruptcy Code, such amount as shall be fixed by an order of the Bankruptcy Court which has become a Final Order.  Unless otherwise specifically provided in this Plan or ordered by the Court, fees or charges and interest accrued from the Petition Date through and including the Effective Date shall not be included in the Allowed Amount of any pre-Petition Date claim or interest.

c) "Bankruptcy Code" or the "Code" means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §101 *et seq*., Title 11 of the United States Code.

d) "Bankruptcy Rules" or the "Rules" means the Federal Rules of Bankruptcy Procedure, as amended.

e) "Bankruptcy Court" or the "Court" means the United States Bankruptcy Court for the District of Connecticut, or such other court as may hereafter have jurisdiction of and act with respect to the Chapter 11 Case.

f) "Business Day" means any day except Saturday, Sunday and any other day on which the Office of the Clerk of the Bankruptcy Court is closed.

g) "Chapter 11 Case(s)" means the entire pending proceedings commenced by the Debtors' petitions for reorganization filed under Chapter 11 of the Bankruptcy Code and styled *Lucarelli's Executive Answering Service, LLC*, bearing case number 13-30443 (JAM), and *Richard and Stephanie Lucarelli*, bearing case number 13-30350 (JAM).

h) "Confirmation Date" means the day on which the Bankruptcy Court enters the Confirmation Order on its docket.

i) "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

j) "Disclosure Statement" means the written document entitled "Second Amended Joint Disclosure Statement  of Richard and Stephanie Lucarelli and Lucarelli's Executive Answering Service, LLC Dated March 5, 2014" relating to this Plan filed by the Debtor pursuant to §1125 of the Bankruptcy Code in connection with the Chapter 11 Case and approved by the Bankruptcy Court as containing "adequate information" (as the term is defined in §1125(a)(1) of the Bankruptcy Code), as the same may be amended or modified and approved by the Bankruptcy Court, including any exhibits and schedules annexed thereto and any documents delivered in connection therewith.

k) "Disputed Claim" shall have the meaning ascribed to said term in Article V hereof.

l) "Effective Date" means the first Business Day following the date that is twenty-eight (28) days after the Confirmation Date. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after the date on which the stay of the Confirmation Order expires or is otherwise terminated.

m) "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (i) which is not the subject of an appeal, or (ii) which shall not have been reversed, stayed, modified or amended, or (iii) from which the time to appeal, seek review, certiorari or rehearing of such order shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules.

n) "Impaired" has the meaning ascribed to it in §1124 of the Bankruptcy Code, and, without intending to limit or alter such meaning, generally can be described as meaning, as to a claim or interest, the alteration of the legal, equitable or contractual rights to which a claim or interest would otherwise entitle the holder, or, as to a claim or interest on which payment has been accelerated due to default, failure to cure any contractual default and reinstate the maturity of such claim or interest existing prior to default and failure to compensate for any damages incurred as a result of the default.

o) "LEAS" refers to the estate of Lucarelli's Executive Answering Service, LLC, case number 13-30443.

p) "Lucarelli" or the "Lucarelli Case" refers to the estate of Richard and Stephanie Lucarelli, case number 13-30350.

q) "Petition Date" means the date the respective Debtors filed the original petitions commencing the Chapter 11 cases, February 27, 2013, for Richard and Stephanie Lucarelli, and March 13, 2013, for Lucarelli's Executive Answering Service, LLC.

r) "Plan" means this plan of reorganization and any amendment hereto or modification hereof.

s) "Plan Administrator" means Richard or Stephanie Lucarelli.

t) "Plan Interest Rate" means the Wall Street Journal prime rate as of the Effective Date plus one percent (1%).

u) "Priority Claims" means any Allowed Claim, other than Administrative Expenses and Priority Tax Claims, to the extent entitled to priority in payment under §507(a) of the Bankruptcy Code.

v) "Priority Tax Claims" means all claims against the Debtor entitled to priority under §507(a)(8) of the Bankruptcy Code, excluding penalties not for actual pecuniary loss, and only to the extent that such claims are not secured claims.

w) "Pro Rata" means, with respect to an amount of cash to be paid or distributed on a particular date to a class of claims, a proportionate share of such cash in accordance with the ratio, as of such

date, of the amount of each respective claim in the class to the aggregate of the amount of claims in the indicated class (including, in each such calculation, the full amount asserted by the respective creditors of any Disputed Claims in the class).

x)  "Schedules" means (i) the schedules of assets and liabilities, current income and expenditures, and executory contracts and unexpired leases and (ii) the statement of financial affairs, including any amendments thereto, which were filed by the respective Debtors with the Bankruptcy Court in accordance with Bankruptcy Rule 1007(b).

8.02.  <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03.  <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.04.  <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

8.05.  <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Connecticut govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE IX**
**DISCHARGE OF DEBTORS**

With respect to those claims arising against the Lucarellis individually, including all priority claims and the full provided treatment of unsecured Class 8, excluding assumed mortgages of Classes 4-6, payment shall be made on the Effective Date.  The Lucarellis therefore shall apply for a discharge immediately upon completion of distributions on the Effective Date.  Such application will be served on all creditors with allowed claims against the individual estate and is subject to objection and Court approval.  In no event, however, shall the individual debtors be discharged from any debt excepted from discharge under Section 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

On the confirmation of this Plan, LEAS will be discharged from any debt that arose before the confirmation of the plan, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d)(1)(A) of the Code.  The Debtors will not be discharged from any debt imposed by this Plan.

Dated this 5th Day of March 2014.

Respectfully submitted,

Respectfully submitted,

/s/ Richard Lucarelli
Richard Lucarelli

LUCARELLI'S EXECUTIVE ANSWERING
SERVICE, LLC

/s/ Stephanie Lucarelli
Stephanie Lucarelli

By:  /s/ Richard Lucarelli
Richard Lucarelli, Duly Authorized

By /s/ Kenneth Lenz
Kenneth Lenz, Esquire
Federal Bar #ct06419
Counsel to Richard and Stephanie Lucarelli
Lenz Law Firm, LLC
236 Boston Post Road
Orange, CT 06477
Telephone:  (203) 891-9800
Facsimile:  (203) 799-0681
ken@lenzlawfirm.com

By:  /s/ Carl T. Gulliver
Carl T. Gulliver, Esquire
Federal Bar #ct00944
Counsel to Lucarelli's Executive
Coan, Lewendon, Gulliver & Miltenberger, LLC
495 Orange Street
New Haven, CT 06511
Telephone:  (203) 624-4756
Facsimile:  (203) 865-3673
cgulliver@coanlewendon.com

**Schedule A**
**Assumed Contracts and Leases**

| Counter Party to Agreement | Agreement |
| --- | --- |
| Sodom Lane Properties, LLC<br>24 Sodom Lane<br>Derby, CT 06418 | Month to Month lease to Lucarelli's Executive Answering Service, LLC, of commercial office space in 20 Sodom Lane, Derby, at rate of $1,275 monthly |