UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| IN RE: | CASE NO. | 13-30350 (JAM) |
| | CASE NO. | 13-30443 (JAM) |
| RICHARD AND STEPHANIE LUCARELLI | | (Jointly Administered) |
| LUCARELLI'S EXECUTIVE ANSWERING SERVICE, LLC | CHAPTER | 11 |
| DEBTORS. | | |

---

### APPEARANCES

Kenneth Lenz, Esq.
Lenz Law Firm, LLC
236 Boston Post Road
Orange, CT 06477

Attorney for Richard and Stephanie Lucarelli

Carl T. Gulliver, Esq.
Coan, Lewendon, Gulliver & Miltenberger, LLC
495 Orange Street
New Haven, CT 06511

Attorney for Lucarelli's Executive Answering Service, LLC

Michael A. Carbone, Esq.
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT 06604

Attorney for unsecured creditor Sweet Delights, LLC

### MEMORANDUM OF DECISION ON SECOND AMENDED JOINT PLAN OF REORGANIZATION

Julie A. Manning, United States Bankruptcy Judge

I. **Introduction**

This case raises an apparent issue of first impression in this district and this circuit: whether The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter, "BAPCPA") eliminated the absolute priority rule in individual Chapter 11 debtor cases.

Courts in other jurisdictions that have addressed this issue have reached opposite conclusions. However, most courts have held that the absolute priority rule in individual Chapter 11 cases was not eliminated by BAPCPA. After analyzing the statutory language and the lack of relevant legislative history in BAPCPA concerning the absolute priority rule, the court concludes that BAPCPA modified, but did not eliminate, the absolute priority rule in individual Chapter 11 cases.

## II. Relevant Facts

The issue before the court arose in the context of the proposed confirmation of a single Chapter 11 plan of reorganization filed in two separate, but jointly-administered Chapter 11 bankruptcy cases, *In re Richard and Stephanie D. Lucarelli*, Case No. 13-30350 and *In re Lucarelli's Executive Answering Service, LLC*, Case No. 13-30443.

The relevant facts are not in dispute. On February 27, 2013, Richard and Stephanie Lucarelli (the "Lucarellis"), filed their individual Chapter 11 case. On March 13, 2013, Lucarelli's Executive Answering Service, LLC ("LEAS"), filed its corporate Chapter 11 case. Not surprisingly, the Lucarellis are the owners and managers of LEAS. On February 12, 2014, the Lucarellis and LEAS filed a Motion for Joint Administration of the related Chapter 11 cases (the "Motion for Joint Administration"). Following a hearing, the Motion for Joint Administration was granted by this court.

On March 5, 2014, the Lucarellis and LEAS filed a Second Amended Joint Chapter 11 Plan of Reorganization (hereinafter the "Joint Plan"). The Joint Plan as proposed contains eight (8) classes of creditors. If the Joint Plan is confirmed, it would be binding on all creditors. It is uncontested that the Joint Plan does not pay all creditors in full and therefore contains impaired

classes of creditors. It is also uncontested that under the Joint Plan, the Lucarellis would retain their ownership interests in LEAS while unsecured creditors would not be paid in full.

None of the creditors of LEAS voted to reject the Joint Plan or objected to confirmation of the Joint Plan. However, three Class 8 unsecured creditors of the Lucarellis, whose claims will not be paid in full and are therefore impaired, voted to reject the Joint Plan. One of the rejecting Class 8 unsecured creditors, Sweet Delights, LLC ("Sweet Delights"), also filed a written objection to confirmation, arguing that the Joint Plan violates the absolute priority rule.

### III. Discussion

#### A. Plan Confirmation and the Absolute Priority Rule

In a Chapter 11 case, a proposed plan of reorganization may be confirmed in only two ways: 1) if all sixteen paragraphs of 11 U.S.C. § 1129(a) are satisfied, in which case the plan can be confirmed consensually; or 2) if a plan proponent satisfies every paragraph of § 1129(a) except for the voting requirements provisions of paragraph (8), a plan can be confirmed nonconsensually (via "cram down"), if it does not discriminate unfairly and is fair and equitable with respect to each impaired dissenting class under the plan. 11 U.S.C. § 1129; *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Shat*, 424 B.R. 854, 857 (Bankr. D. Nev. 2010); *In re Journal Register Co.*, 407 B.R. 520, 529 (Bankr. S.D.N.Y. 2009). The absolute priority rule generally provides that in order for a cram down to be "fair and equitable," every unsecured creditor in a dissenting impaired class must be paid in full before the debtor is permitted to retain "any property" under the plan. 11 U.S.C. § 1129(b)(2)(B)(ii). "The rule has been a cornerstone of equitable distributions for Chapter 11 creditors for over a century." *Ice House America, LLC v. Cardin*, 751 F.3d 734, 737 (6th Cir. 2014).

To understand the evolution of the absolute priority rule, a review of United States Supreme Court cases addressing this issue since the enactment of the Bankruptcy Code is instructive. The absolute priority rule originated as a judicially created doctrine, emerging out of several railroad cases in the early part of the last century. *See, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988), *citing to N. Pac. Ry. Co. v. Boyd*, 228 U.S. 482 (1913); *In re Friedman*, 466 B.R. 471, 478 (9th Cir. B.AP. 2012); 7 Collier on Bankruptcy ¶ 1129.LH., p. 1129-191 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2014) ("The absolute priority rule's origins lie in the intersection between fraudulent transfer law and the rise of the railroad during the nineteenth century."). The historical roots of the absolute priority rule thus trace back to the realm of corporate, as opposed to individual, bankruptcy cases. *Friedman v. P+P, LLC, (In re Friedman)*, 466 B.R. 471, 479 (B.A.P. 9th Cir. 2012) (noting that a "specific mission" of the absolute priority rule historically was to "undermine corporate shareholders' advantages over unsecured creditors").

The absolute priority rule evolved beyond a judicially created doctrine when Congress codified it as part of the Bankruptcy Code in 1978. *See* 11 U.S.C. § 1129(b)(2)(B)(ii) (1978). As the absolute priority rule continued to evolve after enactment of the Code, issues surrounding the rule and its application to particular cases gradually reached the Supreme Court. In 1988, the Court unanimously held that the absolute priority rule applied in individual Chapter 11 cases. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988).[1] In *Ahlers*, the Court held that the absolute priority rule barred individual Chapter 11 debtors from retaining an interest in their farm over the objection of unsecured creditors. In so holding, the

---

[1] Justice White delivered the opinion of the Court in *Ahlers*. Although Justice Kennedy took no part in the consideration or decision of the case, all seven remaining Justices joined in the Court's decision. 485 U.S. at 198.

Court stated:

> the Court of Appeals found that respondents' promise of future "labor, experience, and expertise" permitted confirmation of their Chapter 11 reorganization plan over the objections of their creditors, even though the plan violated the "absolute priority rule" of the Bankruptcy Code. Because we find this conclusion at odds with the Code and our cases, we reverse.
>
> *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 199, 108 S. Ct. 963, 99 L. Ed. 2d 169

(1988). In support of its conclusion, the Court noted that the Code provides that a "fair and equitable" reorganization plan is one which complies with the absolute priority rule. The Court further noted that it is "up to the creditors—and not the courts—to accept or reject a reorganization plan which fails to provide them with adequate protection or fails to honor the absolute priority rule" *Id.* at 207. While the Court in *Ahlers* held that the absolute priority rule applied in individual Chapter 11 cases, the decision did not squarely address the unresolved issue of whether individual debtors could file a Chapter 11 case, an issue of great debate at the time. Although *Ahlers* did not directly address the issue, the decision certainly implied that individuals were eligible to seek relief under Chapter 11.

Following *Ahlers*, the Court revisited the issue of whether individuals could seek relief under Chapter 11 three years later in *Toibb v. Radloff*, 501 U.S. 157, 111 S. Ct. 2197, 115 L. Ed. 2d 145 (1991). In *Radloff*, the Court explicitly held what it implied in *Ahlers*, namely that "[t]he plain language of the Bankruptcy Code permits individual debtors not engaged in business to file for relief under Chapter 11." *Radloff*, 501 U.S. at 166. In so concluding, the Court reasoned that:

> [t]he Code defines "person" as used in Title 11 to include an individual. Under the express terms of the Code, therefore, [a] petitioner is a person who may be a debtor under [C]hapter 7 and satisfies the statutory requirements for a Chapter 11 debtor. [Further, t]he Code contains no ongoing business requirement for reorganization under Chapter 11, and we are loathe to infer the exclusion of certain classes of debtors from the protections of Chapter 11, because Congress

5

took care in § 109 to specify who qualifies – and who does not qualify – as a debtor under the various chapters of the Code.

*Radloff*, 501 U.S. at 161 (internal quotations, original brackets omitted). The Court in *Radloff* was explicit in its belief that Congress understood how to restrict access to various avenues of bankruptcy relief, and that Congress had deliberately chosen not to place Chapter 11 reorganization out of the reach of an individual debtor. *Id.*

Thus, following *Ahlers* and *Radloff*, and until BAPCPA's enactment in 2005, it was clear that individual debtors could file Chapter 11 cases and the absolute priority rule applied in those cases.

### B. BAPCPA's modifications to Section 1129 and creation of Section 1115

BAPCPA's amendments to the Code upset the existing Supreme Court precedent by adding language to 11 U.S.C. § 1129 regarding the application of the absolute priority rule in individual Chapter 11 cases. Specifically, Section 1129 (b)(2)(B)(ii) was modified and now provides in relevant part that:

> (B) With respect to a class of unsecured claims--
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*

6

11 U.S.C. § 1129(b)(2)(B)(ii) (2014) (emphasis added).[2] Since its addition to the Code in 2005, the exact scope and meaning of this language in 11 U.S.C. § 1129(b)(2)(B)(ii) has been a source of divergence among bankruptcy, district and circuit courts.

Additionally, in what appeared to be a manifestation of Congress' intent to deal with issues specific to individual chapter 11 cases, Section 1115 was added to the Code. Section 1115, entitled, "Property of the estate", provides that:

> (a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541--
> (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.
> (b) Except as provided in section 1104 or a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1115. As is true with the language added to 11 U.S.C. § 1129(b)(2)(B)(ii), the proper interpretation of 11 U.S.C. § 1115 has also been a point of divergence among courts since its addition to the Code.

Finally, BAPCPA also added a further statutory condition to the list of conditions required to confirm a Chapter 11 plan, applicable only in individual Chapter 11 cases. The new condition, contained in Section 1129(a)(15), requires individual debtors who fail to pay an objecting allowed unsecured claimant in full, to instead commit the value of five (5) years of their projected disposable income to fund their plan.

---

[2] As pointed out by the bankruptcy court in *In re Lively*, 467 B.R. 884, 890 n. 3 (Bankr. S.D. Tex. 2012) (citing by way of example to *In re Shat*, 424 B.R. 854 (Bankr. D. Nev. 2010)), some courts have suggested that 11 U.S.C. § 1129(b)(2)(B)(ii)'s express reference to 11 U.S.C. § 1129(a)(14) is a scrivener's error and that Congress actually intended the reference to instead be to (a)(15), thus making (b)(2)(B)(ii)'s exemption for individual debtors from the absolute priority rule (whatever its extent) subject to (a)(15)'s requirements and not those of (a)(14). While this may be what Congress intended, this court is simply not empowered to correct the possible scrivener's error.

7

C.  **Interpretations of 11 U.S.C. §§ 1129(b)(2)(B)(ii) and 1115**

Courts called upon to interpret and apply Section 1129(b)(2)(B)(ii) and Section 1115 have come to different conclusions as to their meaning, utilizing a broad range of analyses. Consensus has emerged around two interpretations, commonly referred to as the "broad" and "narrow" views. Adherence to either of these views has generally hinged on the given court's reading of the added statutory language: (i) "included in the estate under section 1115", as that language is used in Section 1129(b)(2)(B)(ii); and (ii) "property of the estate includes, in addition to the property specified in section 541", as that language is used in Section 1115(a).

The broad view interprets the added language to mean that an individual Chapter 11 debtor who proposes not to pay a class of rejecting unsecured claimants in full may nonetheless retain property specified in 11 U.S.C. §541 -- all of the debtor's non-exempt prepetition property *as well as* all post-petition property and earnings -- and still obtain plan confirmation. Courts have noted that this broad reading effectively eliminates the absolute priority rule in individual Chapter 11 cases. By contrast, the narrow view reads 11 U.S.C. § 1129(b)(2)(B)(ii) and Section 1115 as creating a limited exception to the absolute priority rule. Under the narrow view, an individual Chapter 11 debtor whose plan proposes not to pay a class of rejecting unsecured claimants in full may retain only the post-petition property and earnings referred to in Section 1115 and nothing more.

Some courts have found the language in Sections 1129 and 1115 to be unambiguous and applied what they interpreted to be the plain meaning of those statutes. Others have found ambiguity and therefore engaged in various analyses intended to discern Congressional intent favoring one approach or the other. Although cases advocating each approach exist across the country, the present trend and weight of authority, particularly at the circuit level, clearly favors

8

the narrow view. At present, four circuit courts of appeal have ruled in favor of the narrow view (specifically, the Fourth Circuit in *In re Maharaj*, 681 F.3d 558 (4th Cir. 2012); the Tenth Circuit in *In re Stephens*, 704 F.3d 1279 (10th Cir. 2013); the Fifth Circuit in *In re Lively*, 717 F.3d 406 (5th Cir. 2013); and the Sixth Circuit in *Ice House America, LLC v. Cardin*, 751 F.3d 734 (6th Cir. 2014)). However, the Bankruptcy Appellate Panel for the Ninth Circuit has ruled in favor of the broad view. *In re Friedman*, 466 B.R. 471 (B.A.P. 9th Cir.2012). Further, there are bankruptcy courts that endorse the broad view, *e.g.*, *In re Tegeder*, 369 B.R. 477 (Bankr. D. Neb. 2007); *In re Shat*, 424 B.R. 854 Bankr. D. Nev. 2010); *In re O'Neal*, 490 B.R. 837 (Bankr. W.D. Ark. 2013). Indeed, one court has continued to adhere to a broad view, even in the face of the narrow view's current circuit-level predominance. *See*, *In re Woodward*, No. 11-40936, 2014 WL 1682847 at *3-4 (Bankr. D. Neb. April 29, 2014) (Chief Bankruptcy Judge Saladino declining to find his 2007 decision endorsing the broad view in *Tegeder* to be overruled by the intervening non-binding circuit level cases adopting the narrow view).

Despite these thoughtful decisions, there is little available that would be binding on this court. It appears that the only court in this district to take up the application of 11 U.S.C. § 1129(b)(2)(B)(ii) in an individual Chapter 11 case since BAPCPA was the Connecticut Bankruptcy Court in *In re Bullard*, 358 B.R. 541 (Bankr. D. Conn. 2007). However, *Bullard* was expressly limited to the issue of the retention of post-petition property under a proposed plan. Consideration of either the broad or narrow view was therefore not necessary in *Bullard*. The Bankruptcy Court for the Southern District of New York, in an unpublished slip opinion in *In re Pfeifer*, No. 12-13852, 2013 WL 5687512 at *3 (Bankr. S.D.N.Y. Oct. 18, 2013), addressed Section 1129 and specifically the requirements of § 1129(a)(15), but explicitly declined to take

9

up the issue of the absolute priority rule.[3] Since BAPCA's enactment, neither the Second Circuit nor the United States Supreme Court have addressed the absolute priority rule in the context of individual Chapter 11 cases.

### D. Statutory Interpretation

The court's present task is exactly as the Fourth Circuit described in *In re Maharaj* when it said "we must determine the meaning of the Congressional language 'property included in the estate under section 1115' found in § 1129(b)(2)(B)(ii) and 'property of the estate includes, in addition to the property specified in section 541' found in § 1115." 681 F.3d at 569.

#### 1. Statutory Language - Plain and Unambiguous Meaning

Statutory interpretation must begin with the language of the statute. *See, Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) ("[W]ith any question of statutory interpretation, we begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning.") If a statute's meaning is plain, the court's inquiry ends. *See e.g., Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005), quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843 (1997). A statute is

---

[3] Specifically, in its unpublished *In re Pfiefer* slip opinion, the Bankruptcy Court for the Southern District of New York stated in a footnote that:
> [t]here is some question whether the absolute priority rule applies at all in an individual chapter 11 case. Compare *In re Lively*, 717 F.3d 406, 407 (5th Cir. 2013) (holding absolute priority rule applies in an individual chapter 11 case); *In re Stephens*, 704 F.3d 1279, 1286-87 (10th Cir. 2013) (same); *In re Maharaj*, 681 F.3d 558, 568-70 (4th Cir. 2012) (same); with *Friedman v. P+P, LLC (In re Friedman)*, 466 B.R. 471, 482 (B.A.P. 9th Cir. 2012) ("A plain reading of §§ 1129(b)(2)(B)(ii) and 1115 together mandates that the absolute priority rule is not applicable in individual chapter 11 debtor cases.") **This issue need not be decided here.**

*In re Pfeifer*, No. 12-13852, 2013 WL 5687512 at *3 n. 2 (Oct. 18, 2013) (italics in original, emphasis added).

ambiguous if "susceptible to two or more reasonable meanings[.]" *Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001). Only if a court finds a statute ambiguous should it then resort first to canons of statutory construction and, if the meaning remains ambiguous, then to legislative history to resolve said ambiguity. *Daniel*, 428 F.3d at 423 citing to *United States v. Dauray*, 215 F.3d 257, 262, 264 (2d Cir. 2000).

Applying these principles to this case, the court concludes that the relevant clauses of Sections 1129(b)(2)(B)(ii) and 1115 at issue here are ambiguous. Examining first the language "property included in the estate under section 1115" as it is used in Section 1129(b)(2)(B)(ii), the court notes that there are two competing interpretations of the "included in the estate" language. Under the first interpretation, which forms the basis for the narrow view, the meaning of the phrase "included in" is equated to that of the phrase "added to." *See, e.g., In re Maharaj*, 681 F.3d at 569. The reasoning underpinning such an interpretation is that § 541 had already long since established the definition of "property of the estate" at the time of § 1115's enactment in 2005.

The opposing interpretation, which forms the basis of the broad view, instead defines this "included in" language to mean "mentioned" or "referenced in" 1115. Under the broad interpretation, § 541 is absorbed into § 1115 in individual debtor Chapter 11 cases. *See, e.g., Friedman*, 466 B.R. at 482. Either interpretation is, on its face, reasonable and plausible.

Examining next the language "property of the estate includes, in addition to the property specified in section 541" as it is used in § 1115, the same competing interpretations exist. Under the narrow interpretation, the language serves merely "as a signpost, used only to note that § 541 property is already included in the bankruptcy estate, because it is set aside from the rest of § 1115 by a comma and a dash, indicating that it is 'not essential' to the statute's meaning."

*Maharaj*, 681 F.3d at 569. This view is bolstered by the observation that "long before Congress enacted the 2005 amendments, § 541 had already brought into the estate 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Ice House America, LLC v. Cardin*, 751 F.3d 734, 739 (6th Cir. 2014). The broad interpretation of this same § 1115 language treats § 541 as a subset of § 1115. 681 F.3d at 569; *e.g., In re Friedman*, 466 B.R. at 482. Under the broad reading of § 1115, § 541 property is therefore property included in the estate under § 1115. Again, both of these interpretations are plausible. As such, the court concludes that the language of 11 U.S.C. § 1115 and 11 U.S.C. § 1129(b)(2)(B)(ii) is susceptible to more than one reasonable interpretation and is therefore without a plain meaning.

Furthermore, analyzing the specific context in which the language is used, as well as the broader context of the statute as a whole, the court concludes that the language of both statutes remains ambiguous. One can conclude that the reading of the additional language under the narrow view renders trivial Congress' addition of 11 U.S.C. § 1115 to the Code. *Maharaj*, 681 F.3d at 570 (noting, but ultimately rejecting this argument); *Tegeder*, 369 B.R. at 480 (advancing this argument). One can also conclude, as the broad view does, that the additional statutory language is virtually identical to provisions in Chapter 13. The broad view asserts that because there is no absolute priority rule in Chapter 13, a reading eliminating the absolute priority rule in individual Chapter 11 cases is more consistent than a reading that does not.[4]

---

[4] *See, e.g., In re O'Neal*, 490 B.R. 837, 851 (Bankr. W.D. Ark. 2013) (". . . there does not appear to be any other logical reason for all of the changes made exclusively to Chapter 11 for individuals except to make it work like Chapter 13"); *In re Shat*, 424 B.R. 854, 867-68 (Bankr. D. Nev. 2010) (noting in favor of the "broad reading" that "Chapter 13 has no absolute priority rule, and as noted above, most of the changes effected by BAPCPA to individual chapter 11 debtors were part of an overall design of adapting various chapter 13 provisions to fit in chapter 11"); *In re Roedemeier*, 374 B.R. 264, 275 (Bankr. D. Kan. 2007) ("Many of BAPCPA's changes to Chapter 11 . . . are clearly drawn from the Chapter 13 model").

In light of all the above, the court finds plausible either construction of the language of §§ 1129(b)(2)(B)(ii) and 1115.[5] The meaning of the statutes remain ambiguous and the court therefore turns next to the canons of statutory interpretation in an effort to discern Congress' intent.

### 2. Statutory Language – Canons of Statutory Interpretation & Legislative History

The canons of statutory interpretation have been characterized as "guides" that are "designed to help judges determine the Legislature's intent as embodied in particular statutory language." *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122 S. Ct. 528, 535, 151 L. Ed. 2d 474 (2001). In cases where the statutory text is unambiguous and clear, the Supreme Court has stated that statutory canons "do not determine how to read a statute[,] . . . are not mandatory rules" and "need not be conclusive." *Id.*

However, in cases of statutory ambiguity where the parties "each rely on a reasonable meaning of [the particular statutory language at issue]", courts can and should then "resort to the canons of statutory interpretation to help resolve the ambiguity." *United States v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000); *see also Clark v. Martinez*, 543 U.S. 371, 381, 125 S. Ct. 716, 724, 160 L. Ed. 2d 734 (2005) (noting that relevant statutory canons are "a tool for choosing between competing plausible interpretations of a statutory text"); *also, compare Chickasaw Nation*, 534 U.S. at 94 (Supreme Court noting that it "cannot say that the statute [at issue in *Chickasaw Nation*] is 'fairly capable' of two interpretations") *with* Section III.D.1, *supra* (this court finding the statutory language at issue in this case ambiguous as it is susceptible to more than one plausible interpretation).

---

[5] As the Tenth Circuit Court of Appeals observed in *In re Stephens*, 704 F.3d 1279, 1284 (10th Cir. 2013), the very existence of the starkly different conclusions numerous courts have reached on the supposedly "plain" meaning of 11 U.S.C. §§ 1129(b)(2)(B)(ii) and 1115, in and of itself attests strongly to the text's ambiguity.

In determining which statutory canons to apply in resolving an ambiguity, a court should select only those most relevant and useful in light of the particular situation and ambiguity confronted. *Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) (acknowledging that the many "canons of statutory interpretation provide a court with numerous avenues for supplementing and narrowing the possible meaning of ambiguous text" but ultimately applying only the two canons "most helpful to our interpretation of the [relevant statute] in this case").

Applying these principles to the circumstance of this case, this court notes, as every circuit court of appeal to address this issue has at least alluded to,[6] an important and "familiar canon of statutory construction[:] . . . the presumption against implied repeal." *In re Maharaj*, 681 F.3d 558, 568 (4th Cir. 2012). This statutory canon is clearly relevant here, as all parties agree that the court's adoption of the broad view would amount to an implied repeal of the absolute priority rule in individual Chapter 11 cases. Indeed, in the bankruptcy context, the Supreme Court has specifically declared that it "will not read the Bankruptcy Code to erode past bankruptcy practice absent a <u>clear indication</u> that Congress intended such a departure.'" *Hamilton v. Lanning*, 560 U.S. 505, 517, 130 S. Ct. 2464, 2473, 177 L. Ed. 2d 23 (2010), quoting *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 454, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007) (emphasis added, internal quotations omitted). In this instance, there is no such "clear indication" of Congressional intent regarding Sections 1129 and 1115 to effect an implied repeal.

---

[6] *See Ice House America, LLC v. Cardin*, 751 F.3d 734, 739 (6th Cir. 2014); *In re Lively*, 717 F.3d 406, 410 (5th Cir. 2013); *In re Stephens*, 704 F.3d 1279 (10th Cir. 2013).

Finally, BAPCPA's legislative history is similarly unhelpful. The legislative history is sparse, and as other courts have noted, contains nothing that sheds light on Congress' intent surrounding the individual Chapter 11 debtor case and the absolute priority rule issue.[7]

Therefore, the ambiguity of the statutes, the established canon disfavoring implied repeal, and the lack of any useful legislative history leave this court with little alternative but to adopt the narrow view. This holding should not be read as a dismissal of very real concerns and reservations regarding the practical impact and implications of adopting the narrow view. The court notes that when the real-world implications of each view are compared, the broad view leads to a more practical and functional result in individual Chapter 11 cases. The narrow view will have the practical effect of making confirmation of a nonconsensual plan in an individual Chapter 11 case highly unlikely, if not virtually impossible.

The adoption of narrow view, necessitated by the current language of §§ 1129 and 1115, will serve to make Chapter 11 reorganization far less attractive to individual debtors. As the Sixth Circuit recently noted, the structure created under the narrow view effectively results in the individual Chapter 11 debtor being hit by a "double whammy", under which he must both dedicate the value of five years of projected disposable income to the payment of unsecured creditors and comply with the absolute priority rule if those creditors are not paid in full (a requirement not demanded of a Chapter 13 debtor). *Ice House America, LLC v. Cardin*, 751 F.3d 734, 740 (6th Cir. 2014).

---

[7] *See, e.g.*, *In re Stephens*, 704 F.3d 1279, 1286 (10th Cir. 2013) ("Nowhere in BAPCPA's sparse legislative history is there an explanation of what changes result from § 1115."); *In re Friedman*, 466 B.R. 471, 482-83 (9th Cir. 2012) (acknowledging "what may be a very weak universe of original resources" with which to refer in determining Congress' intent); *In re Shat*, 424 B.R. 854, 859-61 (Bankr. D. Nev. 2010) (tracing the legislative process that led to the enactment of BAPCPA and noting that there is available "no discussion of the policy behind, or purposes of, these changes [relative to individual Chapter 11 debtors]");

Indeed, the narrow view effectively requires an individual debtor whose liabilities exceed the Chapter 13 debt limits, and whose creditors will not consent to less than full payment of their claims, to undergo the functional equivalent of a liquidation. Additionally, as is true in this case, debtors in many individual Chapter 11 cases have a pre-petition ownership interest in a business that is their primary source of income. How can liquidating a debtor's primary source of post-petition disposable income – his business – be reconciled with maximizing the amount returned to creditors under Section 1129(a)(15)? It appears that the two cannot be reconciled in a way that maximizes the return to creditors and allows an individual debtor to successfully reorganize under Chapter 11 in the absence of a consensual plan.

Nonetheless, the court concludes that there is not sufficient clear evidence of Congressional intent that would empower it to hold other than it does today. In short, these are the unfortunate results of the language of the statute. In *Ahlers*, the Supreme Court noted that relief cannot come from "a misconstruction of the applicable bankruptcy laws, but rather only from action by Congress". *Ahlers* at 208. The Second Circuit has also stated, "our role as a court is to apply the provision as written, not as we would write it." *United States v. Demerritt*, 196 F.3d 138, 143 (2d Cir. 1999). The court adheres to these fundamental principles in adopting the narrow view.

## IV. Remaining Confirmation Issues--Section 1129(a)(15) and the "New Value" Exception to the Absolute Priority Rule

After deciding that the absolute priority rule applies in this case, the court must next determine if the Joint Plan has met the remaining confirmation requirements of 11 U.S.C. § 1129. Specifically, Section 1129(a)(15) requires the Luccarellis to commit the value of their projected disposable income over a five year period to fund the Joint Plan. As the court noted at a previous confirmation hearing, the information supplied by the Luccarellis to attempt to

16

comply with Section 1129(a)(15) was not correct. The Lucarellis recently filed an Official Form 22C statement to again attempt to comply with Section 1129(a)(15). Unfortunately, the information contained in the Official Form 22C statement does not meet the requirements of Section 1129(a)(15), *see, e.g., In re Gray*, No. 06-927, 2009 WL 2475017 (Bankr. N.D.W. Va. Aug. 11, 2009).

In addition to the Section 1129(a)(15) issue, the Lucarellis and LEAS also argue that if the absolute priority rule applies in individual chapter 11 cases, the Joint Plan can still be confirmed over the objection of Sweet Delights because of the proposed "new value" contribution by the Lucarellis.

The court declines to address either of these issues at this time. Section 1129(a)(15) must complied with if the Lucarellis and LEAS wish to have the Joint Plan confirmed. Furthermore, even if the new value exception to the absolute priority rule applies, the Lucarellis and LEAS have not yet submitted adequate evidence to allow this court to determine if the proposed contribution of "new value" is sufficient. The court will enter a separate order scheduling a status conference to address these issues.

## V. **Conclusion**

For all the reasons discussed above, the court concludes that BAPCPA modified, but did not eliminate, the absolute priority rule in individual Chapter 11 debtor cases. It is so ordered.

Dated at New Haven, Connecticut this 4th day of September, 2014.

Julie A. Manning
United States Bankruptcy Judge